IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Case No. 14-cr-00144-CMA-5

UNITED STATES OF AMERICA,

    Plaintiff,

v.

5.  PAUL RUBIO-SEPULVEDA,
    a/k/a Pelon,

---

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS**
**(DOC. ## 1419, 1420, 1421)**

---

This matter is before the Court on Defendant's Motions to Suppress Evidence, filed on September 19 and 20, 2016. (Doc. ## 1419, 1420, 1421.) The Government filed Responses challenging the Motions on October 3, 2016, (Doc. ## 1430, 1431), and the Court conducted an evidentiary hearing on the Motions on January 5, 2017. Following the hearing, the parties filed supplemental briefing on the suppression issues. (Doc. ## 1582, 1587.) Having reviewed the parties' written and oral arguments, as well as the evidence presented at the hearing, the Court denies the Motions for the following reasons.

## I.    BACKGROUND

The following facts are derived from Defendant's motions, the Government's responses, and the evidentiary hearing on the issue.

Defendant has been charged with numerous criminal counts in connection with his alleged involvement in a drug trafficking organization that has purportedly distributed and sold significant quantities of heroin and cocaine to street-level drug dealers in the Denver, Colorado area.  Since at least August 2013, the Drug Enforcement Administration Front Range Task Force (FRTF) had been monitoring Defendant in connection with this alleged activity.  At the start, FRTF Investigators only knew Defendant by the name "Pelon."  On January 3, 2013, FRTF investigators were tracking his vehicle, believed that Defendant was in the midst of dealing narcotics, and requested that the Denver Police Department (DPD) conduct a traffic stop of the vehicle so that they might obtain his identity.  DPD Officers Randy Yoder and Danny Perez effectuated the stop and requested Defendant's identification.  Defendant obliged and was released minutes later.

On January 14, 2014, FRTF investigators were again tracking Defendant.  Based again on their belief that he was in the midst of distributing drugs, the investigators requested that local law enforcement conduct a traffic stop.  Officer Michael Jelen of the Westminster Police Department conducted the stop and requested Defendant's driver's license.  Defendant could not produce a valid Colorado driver's license and Officer Jelen placed him under arrest.  Officer Jelen then conducted a pat-down search of Defendant, uncovering over $4000 in his pockets, and called for a K-9 unit to search Defendant's vehicle.  The dog alerted the driver's seat, but no drugs were uncovered.  Law enforcement seized four cell phones from the car.

Thereafter, Officer Jelen transported Defendant to the Westminster police station. Before advising Defendant of his *Miranda*[1] rights, Officer Karin Marquez, at the request of Officer Jelen, asked Defendant if he had any drugs on him, to which Defendant replied affirmatively. Defendant then removed a baggie, later confirmed as containing heroin and cocaine, from his pants and gave it to the officers.

The Government subsequently charged Defendant in connection with this, and other, conduct. Claiming violations of his Fourth Amendment rights, Defendant moves to suppress any evidence obtained during the traffic stops and search of his person and car. (Doc. ## 1419, 1420.) Defendant also moves to suppress the drugs uncovered at the police station as having derived from an illegal interrogation. (Doc. # 1421.)

## II. THE TRAFFIC STOPS

The Court first addresses Defendant's challenges to the January 3 and 14, 2014, traffic stops. The Court finds that the stops were justified.

### A. LAW

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Atwater v. City of Lago Vista*, 532 U.S. 318, 326 (2001). In consideration of the Fourth Amendment's protections, "a traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2009). It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. *Id.*

Even apart from a traffic violation, a traffic stop may be justified if the officer has a reasonable suspicion that criminal activity is afoot. *United States v. Cortez–Galaviz*, 495 F.3d 1203, 1205–06 (10th Cir. 2007). In particular, the police may stop a car if they have probable cause or a reasonable articulable suspicion to believe the car is carrying contraband. *United States v. Chavez*, 534 F.3d 1338, 1343–44 (10th Cir. 2008). To determine whether reasonable suspicion exists, the court considers "the totality of the circumstances" and ask whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

Under the collective knowledge doctrine, the particular officer who makes the stop need not have reasonable suspicion that criminal activity is afoot. Instead, the knowledge and reasonable suspicions of another officer can be imputed to him. *United States v. Whitley*, 680 F.3d 1227, 1235 (10th Cir. 2012); *Chavez*, 534 F.3d at, 1345–46. The collective knowledge doctrine has two categories—horizontal and vertical. *See Whitley*, 680 F.3d at 1234. The vertical category applies in this case. "Under the vertical collective knowledge doctrine, a . . . stop is justified when an officer having probable cause or reasonable suspicion instructs another officer to act, even without communicating all of the information necessary to justify the action." *Id*.

Defendant argues that for the collective knowledge doctrine to apply, the officer with reasonable suspicion or probable cause must communicate his reasons to the

officer conducting the stop; otherwise the stop is improper. This Court's reading of the applicable case law, however, suggests a different conclusion—namely that a suspecting officer may instruct another officer to effectuate stop without communicating the basis for the stop, so long as the communicating officer would be justified in making the stop himself. *Id.* For example, in *Chavez*, 534 F.3d at 1347–48, the Tenth Circuit upheld the validity of a traffic stop where a federal agent with probable cause requested that a state officer stop a suspect without communicating to the state officer the reasons for the stop or the nature of the federal investigation. The panel noted, citing multiple courts in agreement, "a police officer may rely on the instructions of the DEA (or other law enforcement agencies) in stopping a car, even if that officer himself or herself is not privy to all the facts amounting to probable cause." *Id.* at 1347. Numerous cases in other jurisdictions support this application of the vertical collective knowledge doctrine. *See United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) ("We are satisfied that the collective knowledge doctrine includes no requirement regarding the content of the communication that one officer must make to another. Where one officer knows facts constituting reasonable suspicion . . . and he communicates an appropriate order or request, another officer may conduct a warrantless stop . . . without violating the Fourth Amendment."); *United States v. Williams*, 429 F.3d 767, 771–72 (8th Cir. 2005) ("[W]e also hold that the collective knowledge of the DEA team was sufficient to provide reasonable suspicion to stop [the co-defendant's] vehicle, and such knowledge was imputed to the officer at the scene when he received [another officer's] radioed request."); *United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2002) ("[T]he arresting

officer need not possess an encyclopedic knowledge of the facts supporting probable cause, but can instead rely on an instruction to arrest delivered by other officers possessing probable cause."); *United States v. Ibarra–Sanchez*, 199 F.3d 753, 758–59 (5th Cir. 1999); *United States v. Celio*, 945 F.2d 180, 183 (7th Cir. 1991).

Thus, where the collective knowledge doctrine applies, the Court need only consider whether the officer requesting the stop had reasonable suspicion or probable cause and need not consider whether the officer making the stop had independent justification for doing so. *Whitley*, 680 F.3d at 1235; *Winder*, 557 F.3d at 1134.

B. ANALYSIS

In the instant case, the vertical collective knowledge doctrine applies to render both challenged traffic stops valid under the Fourth Amendment.

    1. January 3, 2014

Officer Danny Perez and Randy Yoder conducted the stop on January 3, 2014. At the suppression hearing, Officer Perez testified that Detective Nick Werth of the FRTF contacted him and requested that he stop Defendant's vehicle because he was the "subject of an ongoing narcotic[s] investigation." *See Ramirez*, 473 F.3d 1037 (citing and approving of cases where "the officer conducting the stop, search, or arrest was given little more than an order or request; . . . the investigating agent simply provided a description of the suspect" but did not relay "the factual basis for his determination that reasonable suspicion or probable cause existed."). Officer Perez added that he complied with the request but cited "hanging objects" in violation of municipal ordinance § 54-76(d) as the reason for the stop so that Defendant would

remain unaware of the ongoing investigation.[2]  *See Arkansas v. Sullivan*, 532 U.S. 769 (2001) (proper for officers to conduct a stop for more than one reason, even if the predominate reason for contact is not disclosed to the person contacted).

Detective Werth also testified at the hearing.  He explained that he had probable cause to believe that the Defendant was in the midst of dealing cocaine and heroin on January 3, 2014, because he had been tracking Defendant and monitoring his calls.  He added that Defendant was following his daily pattern of dealing narcotics—that "he went to the same locations almost daily, he would always go to one address first, then go to the next, and go to the next," etc.  FRTF investigators believed that, when stopped, Defendant was headed from one drug deal near 9001 Federal Boulevard to another delivery point at his colleague "Terrero's" residence.  (Doc. # 1431-1 at 2.)

The Court finds that Detective Werth had a sufficient basis for stopping Defendant's vehicle, which imputed to Officers Perez and Yoder, rendering the January 3, 2014, stop valid.[3]  Because the stop did not violate Defendant's Fourth Amendment Rights, the Court declines to suppress Defendant's identification obtained during the stop.

---

[2] Even if the Court did not apply the vertical collective knowledge doctrine to this stop, the Court would nonetheless find that the traffic stop was valid under § 54-76(d) of the Denver Municipal Code, which provides, "It shall be unlawful for any person to operate any passenger motor vehicle . . . which has therein or thereon any hanging object which either distracts the operator or obstructs the view of the operator, regardless of the size of the hanging object."

[3] That the FRTF investigators had the subjective goal of obtaining Defendant's identity does not persuade the Court that the entire stop was invalid.  "It is irrelevant that the officer may have had other subjective motives for stopping the vehicle." *See United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

2. January 14, 2014

Officer Jelen conducted the traffic stop on January 14, 2014. At the suppression hearing, Officer Jelen testified that Detective Sprague contacted him, told him the Defendant was under investigation for "drug trafficking," provided a "description and license plate number" for Defendant's vehicle, explained that the task force had been following the vehicle, and asked him to conduct a stop. Officer Jelen complied with the request, but cited Defendant's failure to properly signal before making a lane change in violation of § 42-4-903 as his reason for the stop.[4]  *See Arkansas*, 532 U.S. 769.

Detective Werth also testified about the January 14, 2014, stop. He stated that he was conducting surveillance of Defendant while Defendant was "doing deliveries like normal." Detective Werth described watching Defendant deliver heroin and cocaine at two different addresses. Having observed these deliveries and suspecting that Defendant was headed to a third delivery point, Detective Werth coordinated with Detective Sprague of the North Metro Task Force and told him that the FRTF was

---

[4] Even if the Court did not apply the collective knowledge doctrine to this stop, the Court would still find the stop valid based on Officer Jelen's claimed traffic violation—failing to signal for 100 feet before changing lanes. Although the Court agrees with the Defendant that § 42-4-903 does not plainly contemplate a failure to signal for 100 feet before changing lanes, the Court finds that Officer Jelen's mistake of law was reasonable, particularly considering the absence of case law interpreting the provision and that the Colorado Department of Motor Vehicle Driver's Handbook supports Officer Jelen's interpretation of the law. *See* CO DMV Handbook ("In urban or metropolitan areas, you must signal continuously for 100 ft. before making a turn or lane change."); *see also Heien v. N. Carolina*, 135 S. Ct. 530 (U.S. 2014) (reasonable suspicion for a traffic stop can rest on an officer's reasonable mistake of law; *c.f. United States v. Alvarado-Zarza,* 782 F.3d 246, 250 (5th Cir. 2015) (concluding that the officer's mistaken interpretation of a similar Texas turn signal provision was not a reasonable mistake of law in part because (1) the Texas Driver's Manuel supported an interpretation contrary to the officer's, i.e. supported a plain reading of the statutory provision, and (2) the Texas Court of Appeals had recently clarified the issue).

> involved in a wiretap investigation involving Mexican nationals and Hondurans that were distributing heroin and cocaine, that [the] individual that we are looking to stop [is] driving this red Lincoln, [that] he is halfway through his delivery, and he is doing his deliveries.

As mentioned, Detective Sprague then contacted Officer Jelen to effectuate the stop. *See United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir. 1987) (imputing knowledge of federal agents to detaining officer by "extension," even though she did not personally know the facts giving rise to suspicion; she only knew the automobile to be stopped and that the requesting officer was coordinating a large investigation into the defendant).

The Court finds that Detective Werth had a sufficient basis to stop Defendant's vehicle and that this cause imputed to Detective Sprague and Officer Jelen, rendering the January 14, 2014, valid under the Fourth Amendment.

### III.   DEFENDANT'S ARREST

The Court next addresses Defendant's contention that his arrest on January 14, 2014, for failing to have a valid Colorado driver's license constituted an unreasonable seizure in violation of the Fourth Amendment. Pursuant to Colo. Rev. Statute § 42-2-101, the Court concludes that the arrest was valid.

### A. LAW

Section 42-2-101(1), (10) provides that driving without a valid driver's license is a criminal misdemeanor. A police officer always has the statutory authority to arrest an individual whom the officer observes committing a misdemeanor. Colo. Rev. Stat. § 16–3–102; *see Pineda v. People*, 230 P.3d 1181, 1183 (Colo. 2010) (police had probable cause to arrest defendant in part for driving without a valid driver's license);

9

*People v. Vaughn*, 334 P.3d 226, 230 (Colo. 2014) (same).  However, under Colo. Rev. Stat. § 42-2-102, "any person who has in his or her possession a valid driver's license issued by such person's previous state of residence shall be exempt, for thirty days after becoming a resident of the state of Colorado, from obtaining a license."

### B. ANALYSIS

In this case, Defendant produced a Mexican driver's license but not a valid Colorado driver's license.  It is unclear from the record whether the Mexican driver's license was authentic.  Officer Jelen testified that he had no way of verifying its validity.  Nonetheless, even assuming that the Mexican driver's license was valid, testimony reflects that Defendant had been present in the United States for more than thirty days.  Indeed, FRTF agents had been tracking Defendant since at least August 2013.  Officer Jelen therefore had the authority under § 42-2-101 to arrest the Defendant for driving without a valid Colorado driver's license and the arrest did not violate the Fourth Amendment.[5]

### IV.  SEARCH OF DEFENDANT AND HIS CAR

The Court next considers Defendant's assertions that Officer Jelen's warrantless search of the Defendant's person, which revealed over $4000, and Defendant's car, which uncovered multiple cell phones, constituted unreasonable searches in violation of the Fourth Amendment.  The Court disagrees.

---

[5] Defendant's argument that some Colorado police departments decline to arrest for failure to produce a valid Colorado driver's license, but rather issue warnings or fines, does not change the Court's conclusion; § 42-2-101 still gave Officer Jelen the right to effectuate an arrest in this case.

"Searches conducted outside the judicial process without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 1556 U.S. 332, 338 (2009). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *Id.* The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *Id.* "[W]hen a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime." *Preston v. United States*, 376 U.S. 364, 367 (1964). Moreover, "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Maryland v. King,* 133 S. Ct. 1958, 1971 (2013).

The Court finds this exception applicable to Officer Jelen's search of the Defendant immediately following the stop. Defendant was lawfully under arrest and Officer Jelen was therefore permitted to pat him down for weapons or contraband. The Court therefore declines to suppress the currency recovered in that search.

The Court next addresses the search of Defendant's car. The automobile exception permits warrantless searches of vehicles where there is probable cause to believe that a vehicle contains contraband or other evidence of criminality. *See California v. Carney,* 471 U.S. 386, 392 (1985); *United States v. Forbes*, 528 F.3d 1273, 1277–79 (10th Cir. 2008); *see also Carroll v. United States*, 267 U.S. 132, 153 (1925)

("[C]ontraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant."). Probable cause to search exists when a "prudent person [would] believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). Once probable cause has been established, "the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005); *see also Chambers v. Maroney*, 399 U.S. 42, 52, 90 S. Ct. 1975, 1981, 26 L. Ed. 2d 419 (1970) ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.").

At the suppression hearing, Officer Jelen testified that he initiated a search of Defendant's car because of "the information from [D]etective Spra[gue] that this party might be carrying drugs." Officer Jelen also called for a K-9 unit, which alerted Defendant's seat for drugs. Based on this testimony, combined with the extensive testimony by Detective Werth that the FRTF had observed that Defendant was in the midst of delivering heroin and cocaine, the Court finds that probable cause existed to search the vehicle for contraband and declines to suppress the cell phones uncovered in that search.

## V. EVIDENCE OBTAINED AT THE POLICE STATION

Last, the Court turns to Defendant's contention that he was illegally interrogated at the police station without a proper *Miranda* advisement when Officer Marquez, at the request of Officer Jelen, asked Defendant "if he had any drugs on him." Defendant argues for the suppression of the drugs that he volunteered thereafter. The Government responds that, regardless of the legality of Officer Marquez's question, the drugs inevitably would have been discovered in a search of Defendant and, therefore, they should not be suppressed. The Court finds that the Government has the better argument.

### A. LAW

The inevitable discovery doctrine "permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (citation and quotation marks omitted). The inevitability of discovering evidence by lawful means removes the taint from evidence first discovered through unlawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984). The burden rests on the Government to prove "by a preponderance of the evidence that the evidence at issue would have been discovered without the . . . violation." *Cunningham*, 413 F.3d at 1203.

The Supreme Court has stated that correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1517 (2012) ("Detecting contraband concealed by new detainees . . . is a most

serious responsibility. Weapons, drugs, and alcohol all disrupt the safe operation of a jail."). In *Bell v. Wolfish*, 441 U.S. 520, 546 (1979), the Court stated that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees." Further, in *Illinois v. Lafayette*, 462 U.S. 640 (1983), the Supreme Court held that police may search an arrestee and inventory his personal effects at the station house following an arrest, prior to confining him. *See Petersen v. Farnsworth*, 371 F.3d 1219, 1224 (10th Cir. 2004) (same).

### B. ANALYSIS

For the purpose of this analysis, the Court assumes, without deciding, that Officer Marquez improperly questioned Defendant about drugs in violation of his *Miranda* rights. Nonetheless, based on the case law presented above, coupled with Officer Jelen's testimony, the Court finds that the discovery of the drugs during booking was inevitable, removing any taint from improper questioning.

Officer Jelen testified that before booking a suspect and placing him in a holding cell with other detainees, department policy is to verify that the suspect does not have any contraband on him. This is in part to ensure the security of the facility and in part to protect the suspect from incurring additional criminal charges. Indeed, Officer Jelen had felt a soft bulge in Defendant's pants during his initial patdown and suspected it to be narcotics. Thus, had Defendant not revealed the drugs after Officer Marquez questioned him, Officer Jelen inevitably would have searched the Defendant pursuant to department protocol and his suspicions of contraband. This is entirely reasonable

considering that Defendant was lawfully under arrest, suspected of possessing drugs, and entering into a secure police facility where he would be placed with other individuals. See *Foote v. Spiegel,* 118 F.3d 1416, 1425 (10th Cir. 1997) ("It is not clearly unconstitutional to strip search persons . . . if there is reasonable suspicion they have additional drugs or weapons on their persons."); *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) ("We have articulated two primary concerns in determining whether a strip search is reasonable for the purposes of the Fourth Amendment: whether a detainee is to be placed in the general prison population and whether there is reasonable suspicion that the detainee has concealed weapons, drugs, or contraband.").

Because a lawful search inevitably would have unearthed the drugs in Defendant's pants, regardless of Officer Marquez's pre-*Miranda* questioning, the Court declines to suppress them.

## VI.   CONCLUSION

For foregoing reasons, Defendant's Motions to Suppress (Doc. ## 1419, 1420, 1421) are DENIED.

DATED:  February 21, 2017       BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge